MULLER (GOODYEAR v.). See Cases Nos. 5,577–5,579.

---

## Case No. 9,912.

### In re MULLER et al.

[Deady. 513; 1 3 N. B. R. 329 (Quarto. 86); 2 Am. Law T. Rep. Bankr. 33.]

District Court, D. Oregon. Jan. 11, 1869.

BANKRUPTCY—SECTION 40 OF ACT—WARRANT OF POSSESSION—INJUNCTION—CERTAINTY OF PETITION—CONSTRUCTION OF ACT.

1. The prohibition of "further proceedings" in the last clause of section 40 of the bankrupt act [of 1867 (14 Stat. 536)] applies only to the direct proceedings upon the petition, and not to collateral proceedings by or against third persons, or even the debtor.

2. Under a warrant to take possession of the property of the debtor, the messenger is authorized to take such property in whosoever hands he may find it; and if by mistake, or otherwise, he should take property not belonging to the debtor, it is no ground for discharging the warrant or vacating the order for its allowance; but the party aggrieved by such wrongful seizure has his remedy against the officer making it.

[Cited in Re Briggs, Case No. 1,869.]

3. Injunctions and warrants may be allowed and issued under section 40 of the bankrupt act without notice to the adverse party.

4. The court takes judicial notice of the acts of congress, and they need not be set forth or referred to in any proceeding before it.

5. The warrant provided for in section 40 of the bankrupt act may issue against the person and property of the debtor, or either of them.

6. The jurisdiction of the bankrupt court to enjoin third persons from interfering with the goods of the debtor, or to issue a warrant to take provisional possession of them, does not depend upon the service of a debtor of a proper order to show cause why he should not be adjudged a bankrupt, but upon the filing of a petition in bankruptcy against such debtor.

7. A petition which states that the debtor committed the alleged acts of bankruptcy, "within six calendar months next preceding the date thereof," and on or about a certain day therein, is sufficiently certain in this respect; and as to third persons, in collateral proceedings, the allegation is sufficient without the mention of a particular day.

---

1 [Reported by Hon. Matthew P. Deady. District Judge, and here reprinted by permission.]

8. The allegations in the petition concerning the existence of the debt, or the commission of the acts of bankruptcy, need not be made upon the personal knowledge of the petitioner: but semble, that the deposition thereto should be made upon the knowledge of the deponent, or disclose the grounds of his belief, or the sources of his information.

[Cited in Re Raynor, Case No. 11,597.]
[Cited in Re Butterfield, 6 N. B. R. 258.]

9. The bankrupt act should be construed so as not to permit a petition in bankruptcy to be maintained by a creditor, who became such after the commission of the act of bankruptcy complained of.

10. It is sufficient if the debt of the petitioner existed at the date of the commission of the act of bankruptcy, although not then due.

11. Upon a motion to dissolve an injunction in bankruptcy against third persons, such persons cannot be heard to object to the sufficiency of the petition or the proof of debt, or acts of bankruptcy.

12. The bankrupt act is remedial, and should be construed "with a view to effect its objects, and promote justice" between a debtor and his creditors.

[Quoted in Silverman's Case, Case No. 12,855. Cited in Re Carrier, 47 Fed. 442.]

[In the matter of Max Muller and Max Brentano, bankrupts.]

Lansing Stout, for the motion.

M. W. Fechheimer and William Strong, contra.

DEADY, District Judge. On December 7, 1868, a petition was filed in this court by Benjamin Price, a creditor of the above named M. and B. praying that they be adjudged bankrupts. The claim is stated to be for goods sold and delivered to the alleged bankrupts "within the last two years past," of the value of $3,907.

Three acts of bankruptcy are charged: (1) That said M. and B. being traders under the firm name of Muller and Brentano, and being bankrupt, etc., on November 7, 1868, sold, transferred, etc., their merchandise, accounts and assets to Baum and Wolgennant with intent to defeat, etc., the operation of the bankrupt act. (2) That said M. and B. on the date aforesaid, made the transfer aforesaid to B. and W. with intent to delay, defraud and hinder their creditors; and (3) That said M. and B. on November 10, 1868, paid John Anderson, one of their creditors, with intent to thereby give a preference to such Anderson, and defeat and delay the operation of the bankrupt act.

The proof of debt is made by the petitioning creditor, and states that the debt was due on and before November 23, 1868. The proof of the acts of bankruptcy is made by the attorney in fact of the petitioner (who resides in San Francisco), William J. Hyland. It states that on or about November 7, 1868, M. and B. had in store at Jacksonville, Oregon, merchandise of the value of $35,000, and that at the same time there was due them from solvent persons in the vicinity of Jacksonville, debts of the value of $12,000; and that on said last mentioned date, said M. and

B., with the intent and purpose alleged in the petition, fraudulently sold and transferred all their stock in trade and things in action to B. and W. aforesaid. That said B. and W. were the cousins of M. and B., and the latter was their clerk, and without means, save a small sum due him from M. and B. for services as clerk; and that the means of Baum were not at all adequate or sufficient to make the purchase aforesaid. That such sale and transfer was without consideration, except the small sum due Wolgennant, and that said B. and W. conspired with M. and B. by means of such pretended and fraudulent sale and transfer, to defraud the creditors of said M. and B. and defeat the operation of the bankrupt act. That said B. and W. are wholly irresponsible. that they are disposing of such merchandise below its value, and at auction, and are collecting the debts due M. and B.; and if not prevented, will dispose of said property, so that the creditors of said M. and B. will receive no benefit therefrom. That M. and B. are indebted to persons in San Francisco to the amount of about $35,000, and to other persons in the state of Oregon, a further large sum, to affiant unknown. That these parties all reside at Jacksonville, within a day's journey of California, and that if B. and W. are suffered to remain in possession of the property it will be disposed of, and the parties will leave the state and go beyond the jurisdiction of the court with the proceeds; and that said M. and B. are about to depart from the state and will do so, unless prevented by the order and warrant of this court.

On December 9, on the application of counsel for the petitioning creditor, an order to show cause—form No. 57— was allowed; and also an order directing the issuance of a writ of injunction, forbidding M. and B. and B. and M. from interfering with or disposing of the property and accounts of the alleged bankrupts, and also of a warrant commanding the marshal to take possession of such property, and keep the same until the further order of the court. On December 29, B. and W. by their attorney, filed a motion to dissolve the injunction, and to discharge the property from the warrant. The motion is made upon the papers already mentioned in the case, and the affidavit of O. Jacobs, of Jacksonville. The affiant states that he knows the parties, and that the injunction and warrant herein were served about December 15, 1868. That the goods and merchandise formerly belonging to M. and B., were at the service of said injunction in the exclusive possession of B. and W., as purchasers from said M. and B. and had been in such exclusive possession since November 7, 1868; and that said goods and merchandise were taken from the possession of B. and W. by the messenger, under the warrant aforesaid; and that they are of the value of about $25,000.

The grounds of the motion are set forth therein as follows: (1) There was no authority for the marshal or messenger to seize property in the hands of these parties. (2) The writ of injunction and order to take possession were issued without notice. (3) The order to take possession of goods was not made under any law of the United States. (4) The notice to show cause was and is returnable in January, 1868—a date prior to the act of bankruptcy complained of. (5) The petition fails to show at what time the act of bankruptcy was committed. (6) The charge of bankruptcy is made upon information and belief—there being no positive charge. (7) The proof of indebtedness does not show that the debt of petitioning creditor existed at the time the alleged act of bankruptcy was committed.

Counsel for the petitioning creditor objects to the hearing of the motion at this time, because, the order to show cause not being returned, there is no proof before the court that it has been served upon the debtors. In support of this objection, he cites the last clause of section 40 of the act. I do not think the clause supports the conclusion. The prohibition of "further proceedings" is intended of direct proceedings upon the petition and against the debtor, and not of collateral proceedings by or against third persons or even the debtor.

The only evidence before the court as to the service of the injunction or the execution of the warrant, is contained in the affidavit of Jacobs. Neither of these writs has been returned. The order to show cause is not returnable until January 7. The order allowing the warrant to take possession, to issue, speaks of the goods and effects of the alleged bankrupts, and not those of B. and W. The warrant, I presume, conforms to the order in this respect. I must also presume that the messenger has obeyed the warrant and taken into his possession, the goods and effects of M. and B. in whosesoever hands he found them, and not otherwise. If by mistake or otherwise he took the goods of another, he is liable to the party injured, upon his official bond. This is no more than the responsibility which the common law devolved upon every officer to whom an execution against property was directed. He had to determine at his peril what was the property of the defendant in the writ, and what was not.

Under section 40 of the act. the messenger, under the direction of the warrant, is "to take possession provisionally of all the property and effects of the debtor." And it makes no difference in whose hands he may find them. This is a question of fact for the officer to determine for himself, subject to his responsibility. Taking the affidavit of Jacobs, it appears that this property was in the possession of B. and W. when seized by the messenger, but it does not follow that it was not at the same time the property of M. and B. This question cannot be made or

decided upon this motion. But certainly, upon the statements in the petition and accompanying proofs, it was not the property of B. and W. and the affidavit of Jacobs, considering what B. and W. are called upon to show, rather confirms this conclusion than otherwise. The first ground of the motion is thus disposed of.

The second ground is well founded in fact, but immaterial in law. Injunctions in bankruptcy, at least when issued in the primary stage of the proceedings, under section 40 of the act, may be allowed and issued without notice. The provision in the act of March 2, 1793 (1 Stat. 334), forbidding the writ to be granted in a suit in equity, without notice to the adverse party, does not apply to proceedings in the district court under the bankrupt act. Ex parte Smith [Case No. 12,994]; Ex parte Carlton [Id. 2,415]; cited in Brightly, Fed. Dig. 456; Ex parte Donaldson [Case No. 3,981]; In re Wallace [Id. 17,094]. In re Wallace was decided in this court, upon able argument and careful consideration. Upon further argument the conclusion seems to be sound in principle and upon authority. The rule in the judiciary act requiring notice in all cases of injunction is an arbitrary and anomalous one, and if applied to the summary proceedings under the bankrupt act, would in most instances render it nugatory. Notice to B. and W. of the application for the injunction in this case, would have been notice to them to leave this jurisdiction with the property or its proceeds, which they could have done, if so disposed. Doubtless the court may require notice to be given to the adverse party, and even that the applicant shall give security for damages, whenever it thinks the ends of justice or the security of parties require it.

Possession of the goods was not taken under the order, but the warrant which issued pursuant to the order. To authorize the allowance of this order or the issuing of this warrant, notice to the adverse party was not necessary. On the argument nothing was shown in support of this objection, neither can there be.

In support of the third ground of the motion, counsel shows that the order allowing the issuing of the warrant, excepts from its operation such "goods as are exempt from the operation of the act of congress entitled, 'An act to establish an uniform system of bankruptcy throughout the United States,' approved March 2, 1868." There being no bankrupt act of this date, the conclusion is, that the order for the warrant to take possession was not made under any law of the United States. This is an extremely technical objection, and admits of a sufficient and equally technical answer. The order for the warrant does not profess to be made under the act of March 2, 1868, but it only excepts from the operation of such warrant the goods exempt by that act. There being no bankrupt act of such date, the exemption is nuga-

tory, and the warrant to take possession is without qualification in this respect. But the recital of the title of the bankrupt act in any proceeding, is mere matter of form. The recital in this order gives the date of the act incorrectly—1868—for 1867. But this immaterial mistake can in no way affect the legality of the order. The order would have been sufficient without stating the title or date of the act. The court takes judicial notice of the acts of congress, and they need not be set forth or specially referred to in any proceeding before it.

In support of this ground of the motion, it is also urged that the act (section 40) does not authorize the issue of a warrant against the goods of the alleged bankrupt alone, but that the warrant cannot issue unless it be against his person, and also "to take possession provisionally of all the property and effects of the debtor," as well. This construction of the act does not seem to me to be warranted by the language or object of the section. If the showing be such as section 40 requires, the warrant may issue against the person and goods or either of them. The greater includes the less, and neither the alleged bankrupts or B. and W., can or ought to be heard to complain that the petitioning creditor has been satisfied to take process against the goods only, because he was entitled to it against the person also. If, in fact, the order and warrant had been for the arrest of both the person and goods, the latter might have been executed against both or either, as the petitioning creditor might direct.

The fourth ground of the motion is based upon the assertion therein, that the order to the debtor to show cause, is by mistake made returnable in January, 1868, instead of 1869. The order has not yet been returned, and there is no evidence before the court that it is returnable at an impossible date. Nor is it apparent, if it be admitted that the order is erroneous in this respect, how the fact can in any way affect the merits of this motion. The jurisdiction of the court to enjoin B. and W. from interfering with the goods of the debtor, or to issue a warrant to take provisional possession of them, is not dependent upon the service on the alleged bankrupts of a proper order to show cause.

As to the fifth ground of the motion, the petition avers that the several acts of bankruptcy complained of, were committed "within six calendar months next preceding the date of the petition," and on or about a certain day in November, 1868. This is sufficient; and, if it were not, to show the actual day, it certainly is, to show that they were committed within six months before filing the petition, and that therefore, this court has jurisdiction to adjudge M. and B. bankrupts on account of them. Whether the particular day within this six months is stated or not, does not matter so far as this motion is concerned. When the alleged bankrupts appear

to make defense to this petition, the question can be made as to whether the particular day is sufficiently stated, and not otherwise or before.

As to the sixth ground of the motion, it is not well founded in fact. The charge of bankruptcy is not made upon information and belief. The allegation in the petition is positive and unqualified as to the transfer of the stock of merchandise and book accounts to B. and W., and also the payment to Anderson, with intent to prefer him. The same is true of the deposition to the acts of bankruptcy. True, the petition states that in addition to the merchandise and accounts, there was transferred "all the available assets" of M. and B. and this averment as to the assets is upon information and belief. This averment is a mere make-weight, and it is perfectly immaterial whether it is in the petition or not. The allegations as to the transfer of the merchandise and accounts, and of the payment with intent to give a preference, are all or either of them sufficient allegations of acts of bankruptcy. Nor is there anything in the act, or the orders and forms, or the nature of the proceeding, which requires that the allegations in the petition either as to the debt or the acts of bankruptcy, should be made upon the personal knowledge of the petitioner. The petition must be made by the creditor, and in most instances, can only be made upon information and belief. In addition to the petition there must be a deposition to the debt and the act of bankruptcy. In these it may be proper that the witness should speak from his own knowledge, or at least disclose the grounds of his belief, or the sources of his information. Much will depend upon the circumstances of the particular case.

By the seventh ground of the motion, it is asserted that the debt of the petitioning creditor was not in existence when the acts of bankruptcy complained of were committed. Under the English bankrupt act, it was held that a commission ought not to be granted on the petition of a creditor whose debt was not in existence when the act of bankruptcy was committed. 1 Bac. Abr. 558. This statute (6 Geo. IV. c. 16, § 12), allowed the commission to issue upon the petition of any creditor or creditors of the alleged bankrupt (1 Bac. Abr. 552). The act of March 2, 1867, allows any creditor whose debt is of sufficient amount, and provable under the act to maintain the petition to have his debtor adjudged a bankrupt (section 29). A debt contracted after the act of bankruptcy is provable under the act (section 19). The letter of the English and American statutes is not materially different in this respect. Taken literally, they both would permit a petition to be maintained by a creditor whose debt arose after the commission of the act of bankruptcy complained of. The American statute ought, I think, to be construed as the English one, so as not to permit a petition to be maintained by a creditor whose debt was contracted after the act of bankruptcy happened. This is in accordance with the decision of this court in Re Burk [Case No. 2,156] that a creditor should not be heard to object to the discharge of a voluntary bankrupt for matters which occurred before he became such creditor. The construction is supported by the familiar principle, that no one ought to be allowed to complain of that which does not injure him. In case the act of bankruptcy was secret and unknown to the creditor at the time of contracting his debt, the rule might not apply.

The proof of debt in this case, and the petition substantially shows that M. and B., on November 23, 1868, and before, were indebted to the petitioner in the sum of near $4,000. The petition was verified on the last mentioned date, and the acts were committed some days before in the same month. The indebtedness arose upon the sale and delivery of goods prior to, and within two years of the date of the petition, to be paid for upon request. The allegations of the petition are framed upon the idea that the debt did not become due until payment was requested, and that the commencement of this proceeding was a request. This is probably a correct conclusion in the premises. But the question is not when the debt became due and payable, but when did it commence to exist. It commenced with the delivery of the goods, or any portion of them equal in value to the sum of $250. The proof and petition were made in San Francisco, and they are very slovenly and unskillfully prepared in this respect, as well as some others. But I think it a fair inference from the facts stated, and the nature of the transaction that the debt of the petitioner or at least $250 of it existed before November 7, 1868—the date of the first acts of bankruptcy.

This disposes of the motion. It is disallowed. I have considered this motion as if Baum and Wolgennant were entitled to make these objections. But as to the 4, 5, 6 and 7 grounds of the motion, I do not think they have any right to be heard. The questions raised on these points are between the petitioning creditor and the alleged bankrupts, and not B. and W. In the course of the argument, counsel for B. and W. have insisted that this is a special proceeding, purely statutory, and that the act must be taken most strictly against the creditor, and in favor of the bankrupt. In my judgment this view of the matter is not supported by reason or authority. The act does not attempt to punish the bankrupt, but to distribute his property fairly and impartially between his creditors, to whom in justice it belongs. It is remedial, and seeks to protect the honest creditor from being overreached and defrauded by the unscrupulous. It is intended to relieve the honest but unfortunate debtor from the burden of liabilities which he cannot discharge, and allow him to commence the business of life

anew. The power to pass bankrupt laws is one of the express grants of power to the national government; and history teaches that the want of a uniform law on this subject throughout the states, was one of the prominent causes which led to the assembling of the constitutional convention and consequent formation and adoption of the federal constitution.

Such a statute is not to be construed strictly, as if it were an obscure or special penal enactment, and this was the sixteenth instead of the nineteenth century. The act establishes a system and regulates, in all their details, the relative rights and duties of debtor and creditor. Such an act must be construed—as indeed should all acts—"according to the fair import of its terms with a view to effect its objects and to promote justice."