WARLEY, The ELLA. See Cases Nos. 4,370–4,374.

WARMOUTH (KELLOGG v.). See Case No. 7,667.

## Case No. 17,177.

### In re WARNER et al.

[5 N. B. R. 414.] [1]

District Court, E. D. Michigan. Nov. 8, 1871.

ACTS OF BANKRUPTCY—DISCHARGE OF BANKRUPT FRAUDULENT PREFERENCES—BANK DEPOSITS—LIEN.

1. Where a debtor's liabilities exceed his assets, and he has ceased to meet his indebtedness as it falls due, a pledge, payment, transfer, assignment or conveyance of any part of his property, absolutely or conditionally, made while in this condition, is an act of bankruptcy, and constitutes sufficient ground, under the twenty-

[1] [Reprinted by permission.]

ninth section of the bankrupt act [of 1867 (14 Stat. 531)], for refusing him a discharge.

[Cited in Re Wolfskill, Case No. 17,930; Re Carrier, 47 Fed. 444.]

2. A banker has no lien upon the moneys of a depositor for any separate debt which the depositor may be owing him, hence, any amount on deposit, in the name of the bankrupt, must go in as assets, and the banker must prove his debt and take his dividends with the other creditors.

3. When a banker, in accordance with his usual custom, charges his depositor, in his deposit account, for the notes or other obligations as they fall due, the transaction is valid only as between the banker and the depositor, but in the event of the depositor becoming bankrupt, it might constitute an unlawful preference under said act.

[In the matter of S. P. Warner and others, bankrupts.]

Mr. Reilly, for opposing creditors.
Mr. Kent, for bankrupts.

LONGYEAR, District Judge. As I deem the second and third specifications sustained by the proofs, and sufficient to defeat a discharge under the bankrupt act, the other specifications will not be considered. The second and third specifications charge the bankrupts with having given fraudulent preferences contrary to the provisions of the act, and also charge the same acts to have been done by the bankrupts in contemplation of becoming bankrupt and for the purpose of preventing their property from being distributed under the provisions of the act, and of defeating and delaying the operation thereof. Section twenty-nine of the act, provides that no discharge shall be granted, or if granted be valid, if the bankrupt has, among other things: First. "Given any fraudulent preference contrary to this act," or, Second. "In contemplation of becoming bankrupt, made any pledge, payment, transfer, assignment or conveyance of any part of his property, directly or indirectly, absolutely or conditionally, for the purpose of preferring any creditor or person having a claim against him, or who is or may be under any liability for him, or for the purpose of preventing the property from coming into the hands of the assignee, or being distributed under this act in satisfaction of his debts." The first provision above cited is general in its terms, and under it it is sufficient to show a preference, which was fraudulent under any of the provisions of the act. The second provision is specific, and it is necessary that the proofs should bring the case clearly within its terms, and show especially that the act charged was done "in contemplation of becoming bankrupt." In re Rosenfeld [Cases Nos. 12,057, 12,058]; In re Locke [Id. 8,439]; In re Burgess [Id. 2,153]; In re Gay [Id. 5,279]; In re Louis [Id. 8,527]; In re Foster [Id. 4,961]. Where, however, as in this case, the specifications bring the case within both provisions, proof sustaining either is sufficient. What constitutes a fraudulent preference within the meaning of the first provision of section twenty-nine, above cited, is defined in the first clause of section thirty-five, and it is composed of the following elements: First, actual insolvency of the debtor, or, in lieu thereof, contemplation of insolvency, and, second, that the act complained of was done with a view to give a preference. It is within this provision that I think this case is brought by the proofs.

The specific acts charged and proved are: First. Payment to Thomas Hughes, a creditor, a debt of twenty-six dollars and fifty cents, July twenty-first, eighteen hundred and sixty-eight; and, Second. Payment to David Preston & Co., creditors, on indebtedness, one hundred and ninety-three dollars and fifty cents, July fifteenth, eighteen hundred and sixty-eight. Under the rule above laid down, the following questions arise: First. Were the bankrupts insolvent when these respective payments were made? Second. Were these payments, or was either of them, made with a view to give a preference? In answer to the first question, it is sufficient to state that it is not contested, neither can it be doubted under the proofs, that the bankrupts were in fact insolvent at the times mentioned. But an affirmative answer to the second question is contested. It is claimed, first, that the bankrupts, although in fact insolvent, did not know of their insolvency at the time the payments were made, and that it is therefore impossible that the payments were made with a view to give a preference. The conclusion is no doubt a correct one, from the fact assumed or claimed to exist, but the proofs do not sustain the assumption.

It has been held, and no doubt correctly, that every person is presumed to know his own pecuniary condition. That presumption, however, may be rebutted, and a person may show that he was innocently mistaken as to his true condition. The burden is, however, upon the person setting up such claim. In this case, the claim that the bankrupts were ignorant of their true condition is founded upon some proof in the case tending to show that when they commenced business, which was in February, eighteen hundred and sixty-eight, by a mistake in footing up their assets they appeared then to be amply solvent. Some time, however, in July, eighteen hundred and sixty-eight, but at what particular day does not clearly appear, but somewhere about the twelfth or fifteenth, the bankrupts took an inventory of their assets, and then learned, and it is not controverted that they then knew, whatever may have been their belief before, that they were insolvent. It also appears from the proofs that they ceased to meet their engagements as they fell due in the ordinary course of the business in which they were engaged in the latter part of June. This being of itself evidence of insolvency under the bankrupt act, was sufficient at least to

put them on inquiry as to their true condition, and to warn them to suspend all payments until they could ascertain whether they could safely pay any of their creditors without jeopardizing the interests of the others. Resort to this fact is, however, unnecessary, because I consider it clearly proven that both the payments were made after the inventory in July, from which, as we have seen, the bankrupts ascertained a clear knowledge of their insolvent condition. According to the entries in the bankrupts' cash account, the payment to Hughes was made July twenty-first, eighteen hundred and sixty-eight, which date is, beyond all question, after the taking of the inventory, and which, in the absence of all explanation, must be taken to be the correct date. True, Russell C. Warner, one of the bankrupts, testifies that he thinks nothing was paid Hughes after the inventory was taken. Such mere loose opinion can of course be given no weight as against the deliberate entry upon their books, evidently made at the time the transaction took place. The payment to Preston & Co. was unquestionably made July fifteenth, eighteen hundred and sixty-eight. Looking at this date alone, and in consideration of the uncertainty as to the exact date of the taking of the inventory, there might be room for doubt as to which took place first. But Russell C. Warner, who gave the check to Preston & Co., testifies that he gave the check while S. P. Warner was in New York, and that the latter did not leave for New York until after the inventory had been taken. This renders it clear, beyond all controversy, that the payment to Preston & Co. was made after the taking of the inventory, and of course when the bankrupts had full knowledge of their insolvency. But it is further claimed, that although the bankrupts were in fact insolvent, and were cognizant of the fact when the payments were made, the proof shows that at those times they were intending to go on with their business, and hoped and expected eventually to pay all their creditors in full, and that therefore they could not have made the payments with a view to give a preference. In other words, it is claimed that these bankrupts, notwithstanding the fact, well known to them, that they were insolvent and had not sufficient assets to pay all their debts in full, decided to take the administration of their estate into their own hands, instead of placing it in the bankruptcy court, (where the law, in its spirit and intent, if not by its letter, contemplates it should be placed under such circumstances,) with the hope that their creditors would suffer them to carry out such decision, but without any arrangement, consent or understanding with such creditors, upon which to found such hope. Therefore, any payments which the bankrupts made in carrying out such decision cannot be held to have been made with a view to give a preference, because in such case the payment was made with the intent eventually to pay all in full.

I cannot subscribe to any such doctrine. When a debtor's liabilities exceed his assets, and he has ceased to meet his indebtedness as it falls due, and has thus become in law, as well as in fact, insolvent, then every payment made by him is in fact a preference of the creditor so paid over his other creditors; and when such debtor, with a full knowledge of his bankrupt condition, deliberately decides to administer his estate himself, and proceeds to make partial payments, he must be held to have decided and intended to do just what he does do, viz.: to prefer and to pay off such creditors first as to him shall seem fit. Such a decision is, in a general sense, nothing more and nothing less than what a decision of such debtor to pay a particular debt is in a particular sense; and the one is as much in violation of the bankrupt law as the other.

Neither is the case of the bankrupts aided by the claim that is set up for them—that they hoped eventually to be able to pay all their creditors in full; because, in the first place, such hope necessarily involves the idea that the debtor has a right to pay when he pleases, and to prefer whom he pleases, which is in direct violation of the well recognized principle of law that a creditor's right to receive his pay when due is just as great as his right to receive his pay at all; and in the second place, in the condition in which these bankrupts appear to have been, no such hope could have been reasonably entertained. There was no foundation for it in fact. This really appears to have been the conclusion of the bankrupts themselves, because in about a month after they ascertained their real condition, we find them, without any new developments in their affairs, voluntarily going into bankruptcy, thereby doing just what they should have done in the first instance. Therefore, the bankrupts being in fact insolvent when the payments were made, such payments operated necessarily as a preference to those creditors to whom they were made, and such payments having been made with full knowledge on the part of the bankrupts of their true condition, they must be presumed, as fair minded, reasonable business men, to have known that such was the operation of such payments, and of course that they made the same with that view. The proof not being sufficient to do away with such presumption, the same remains in full force. I therefore hold that the second and third specifications are sustained. The sooner it comes to be generally understood that the only safe, lawful and strictly honest course for insolvent debtors to pursue, is at once, upon their condition becoming apparent to themselves, to place their assets in the control of their creditors, where all may share alike, by availing themselves of the provisions of the bankrupt act, the better it will be for both the debtor and the creditor classes.

There is one other position taken by the learned counsellor for the bankrupts which should not be passed by without notice. Da-

vid Preston & Co., to whom the payment of one hundred and ninety-three dollars and fifty cents was made, were bankers, and with whom the bankrupts kept their deposits. Preston & Co. held the bankrupts' note for about seven hundred dollars, and the one hundred and ninety-three dollars and fifty cents was the amount which the bankrupts had on deposit with them, and the check which was given to Preston & Co. was for that amount to apply on the note. It was claimed that Preston & Co. had the right to apply the amount of deposits on their note even without any check or other direction of the bankrupts, and that, therefore, the application of it was no preference. In the first place, I do not consider the position a sound one in law, especially as between the banker and the other creditors of the bankrupt depositor. The banker has no lien upon the moneys of depositors for any separate debt which the depositor may be owing him, and he therefore has no right to apply the same to the payment of such debt without the consent of the depositor. Were it otherwise the bankrupt's estate might be all in money thus on deposit, and the banker might hold indebtedness against him sufficient to absorb the whole, and the other creditors be thus left without anything whatever, thus effectually defeating the object and purpose of the bankrupt law. The amount on deposit must go in as assets, and the banker must prove his debt and take his dividends with the other creditors. Where, however, it is according to the usual and generally understood custom of a banker to charge to his depositors in their deposit account the notes or other obligations of the depositors as they fall due, the consent of the depositor to such course may fairly be presumed, and the transaction be thus brought within the rule as above stated. But even this would make the transaction valid only as between the banker and the depositor, but as between them on the one hand, and the other creditors on the other hand, it might constitute an unlawful preference under the bankrupt law, and for that reason be void. But in any view of the law the position assumed cannot be maintained in this case, because the note held by Preston & Co., according to the statement of it as given by the bankrupts in the schedule of their indebtedness attached to their petition for adjudication of bankruptcy, was not due at the time the check was given. The check was given July fifteenth, and the note was not due till the sixth day of August following. Preston & Co., therefore, had no demand against the bankrupts at the time the payment was made, and the payment stands out, in one sense, as a mere gratuity, and clearly as a preference carrying with it evidence that it was so intended.

The second and third specifications being sustained, a discharge is refused.