## In re CARRIER et al.

### (District Court, W. D. Pennsylvania.)

1. BANKRUPTCY—DISCHARGE—OPPOSING SPECIFICATIONS.

Under Rev. St. U. S. § 5110, cl. 2, concerning bankruptcy, which provides that no discharge shall be granted if the bankrupt has concealed any writings relating to his estate, a specification, filed in opposition to the discharge of a bankrupt; which charges that he has concealed from his assignee "certain papers" relating to judgments obtained against him prior to his adjudication, "the papers" so concealed being a receipt of one S. for the notes on which the judgments were recovered, is insufficient, in that it is vague and uncertain.

2. SAME—LOSS OF PROPERTY.

Under Rev. St. U. S. § 5110, cl. 2, which provides that no discharge shall be granted if the bankrupt has been guilty of any fraud or negligence in the care of property belonging to him at the time of the presentation of his petition, "or if he has caused, permitted, or suffered any loss, waste, or destruction thereof," a specification charging that the bankrupt entered into a conspiracy with third persons, and caused a large quantity of timber to be cut and removed from land belonging to the estate, for the purpose of defrauding his creditors, is sufficient, though the timber was removed four years after the adjudication in bankruptcy, as such statute applies to both voluntary and involuntary bankruptcy.

3. SAME—CONVEYANCE OF LAND.

A specification under the above statute, charging that the bankrupt, 15 years after the adjudication, conveyed land owned by him prior to the presentation of the petition against him, for the purpose of defrauding creditors, is insufficient, as the title to such land had passed to the assignee prior to the conveyance.

4. SAME—PREFERENCES IN CONTEMPLATION OF BANKRUPTCY.

Rev. St. U. S. § 5110, cl. 9, concerning bankruptcy, provides that no discharge shall be granted if the bankrupt has in contemplation of becoming bankrupt made any payment or conveyance of any part of his property, directly or indirectly, for the purpose of preferring any creditor, or for the purpose of preventing the property from coming into the hands of the assignee. *Held*, that a specification charging that the bankrupt, for the purpose of preventing his property from coming into the hands of the assignee, suffered certain judgments to be entered against him upon notes and checks which had been previously paid, is insufficient, as it does not appear that the judgments were collected from the assigned estate.

At Law. Motion to strike off specifications of opposition to discharge of A. F. Baum.

*J. M. Garrison*, for the motion.

*L. B. D. Reese*, opposed.

REED, J. The first specification filed in opposition to the discharge of A. F. Baum avers that, after he was adjudged a bankrupt, and assignees of his estate were duly chosen, he refused to surrender to the assignees the papers relating to his estate, and concealed from said assignees "certain papers" relating to judgments obtained against him prior to his adjudication, "the papers" so concealed being a receipt of one Alexander Smith for the notes upon which the judgments were recovered. The bankrupt has moved to strike off this specification, for the reason that it is defective, because it does not appear that the receipt therein referred to was of any value to the bankrupt's estate, nor how the same was concealed by Baum from the assignees, nor that his refusal to surrender the same was willful. Section 5110, Rev. St., provides that no discharge shall be granted if the bankrupt has concealed any part of his estate or effects, or any books or writings relating thereto, or has been guilty of any fraud or negligence in the care or custody or delivery to the assignees of the property belonging to him at the time of the presentation of his petition and inventory. In the *Case of Rathbone*, 1 N. B. R. 294, it was held that the specifications of the ground of opposition to a discharge must, under section 5110 and General Order No. 24, be as specific as the specifications of the grounds for avoiding a discharge after it is granted, required by section 5120; and the allegations must be allegations of fact, and must be distinct, precise, and specific, and must not be allegations merely in the language of section 5110, or allegations so general as really not to advise the bankrupt what facts he must be prepared to meet and resist.

The specification contains two charges, the first of which is that he refused to surrender to the assignees the papers relating to his estate. This, in my judgment, is an insufficient statement. The mere refusal to surrender papers is not a ground for withholding a discharge, and, if papers can be considered as property belonging to the bankrupt within the terms of the statute, there is no allegation that he has been guilty of any fraud or negligence in failing or refusing to surrender the papers.

Nor does it appear by the specification what the papers were, or that they were of any value to the estate. *In re Pierson*, 10 N. B. R. 107. The second charge in the specification is that, after he was adjúdged a bankrupt, and his assignees were chosen, the said Baum concealed from said assignees "certain papers," namely, a receipt. "A mere failure on the part of the bankrupt to render in property possessed by him on his schedules is not made a ground by the act for refusing his discharge. The act does make the concealment of the same a ground for such action, but then it must be averred and proved that it was willful." *In re Eidom*, 3 N. B. R. 106. "There is one objection to this specification which I think well taken. The defendant is charged in general terms, without stating how or in what manner the concealment was effected, or when or in what stage of the proceedings it occurred. * * * The specification may mean that the defendant concealed the property by omitting to mention it in his inventory, or that he concealed it in his subsequent examination before the court or commissioner. It may also mean that the concealment was by secreting the property, so that the assignee in bankruptcy could not find it. The plaintiff must be more particular in his allegations, and tell us what he means by concealment; otherwise we cannot say that the replication contains a good answer to the plea, nor will the defendant have reasonable notice of what may be urged on the trial." *Brereton* v. *Hull*, 1 Denio, 75. "In *Brereton* v. *Hull*, a discharge in bankruptcy was pleaded. To this plea there was a replication, generally alleging that the defendant was guilty of fraud, and of willful concealment of his property, and purporting to set forth three specifications. * * * The third specification alleged that the defendant had concealed property of considerable value. This was held bad, because it did not describe the property as to kind or quantity, and did not state how or in what manner the concealment was effected, or when or in what stage of the proceedings it occurred. The same doctrine, substantially, was held in *Chadwick* v. *Starrett*, 27 Me. 142, and is approved by this court." *In re Rathbone*, 1 N. B. R. 294. In the *Case of Dreyer*, 2 N. B. R. 212, a specification that the bankrupt had concealed part of his estate and effects was held vague and insufficient; as was also, in the *Case of Tyrrel*, Id. 200, the specification that the bankrupt had neglected to produce before the register or deliver to the assignee his books, papers, and writings relating to his estate, in willful violation and fraud of the bankrupt law. In the *Case of Butterfield*, 5 Biss. 120, the court say: "The courts have decided again and again that these specifications must be as exact as the specifications in an indictment." In accordance with the rules established by the cases cited, I think this portion of the first specification is insufficient. Even reading the two clauses of the specification together, as referring to one matter and intended to charge one offense, the specification is vague, uncertain, and insufficient, and must be stricken off.

The second specification filed by the objecting creditors is: "The said A. F. Baum, after he was adjudicated a bankrupt, was guilty of fraud and negligence in the care and custody of the property belonging to him

at the time of the presentation of the petition against him, and has caused and permitted waste and destruction thereof;" and two matters are detailed under this specification which will be referred to later more fully. The bankrupt has moved to strike off this specification, first for reasons applicable to the whole specification, and afterwards for reasons referring to the acts detailed under the specification. His general reasons are: *First*, that he, being an involuntary bankrupt, is not subject to the provisions of the second clause of section 5110, Rev. St.; and, *second*, the acts detailed being in reference to land, the specification is defective, because fraud and negligence in the care and custody of land are not made, by the bankrupt act, grounds for withholding a bankrupt's discharge. Counsel for the bankrupt has argued that the second clause of section 5110 cannot apply to an involuntary bankrupt, because it refers to the property belonging to the bankrupt "at the time of the presentation of his petition and inventory," and therefore this clause can only apply to a voluntary bankrupt, for he alone presents a petition; and that an involuntary bankrupt is under no obligation as to care and custody of his property prior to adjudication, because the proceedings in his case are hostile, and presumably contested with no certainty of a decision against him, and until adjudication he is free from responsibility for the care of his property, and not answerable for fraud or negligence therein; that section 5110 recognizes the distinction between the duties in this respect of a voluntary and an involuntary bankrupt by the use of the words quoted, and that it was not the intention of the act that the neglect of a duty not imposed should be visited upon the latter by refusing his discharge. I do not think this position sound. There is undoubtedly a difference, before adjudication, in the *status* of a debtor who has filed a voluntary petition in bankruptcy, and one against whom a petition has been filed by creditors. In the one case, seeking the benefits of the act, he should suspend business, and faithfully preserve his estate ·in its condition at the time he filed the petition until an assignee is appointed to take charge of the assets. In the other, he is permitted to continue business, and deal with his property as his own until adjudication. *M. & M. Nat. Bank* v. *Brady's Bend Iron Co.*, 5 N. B. R. 491. But good faith is required of him as well as of the voluntary bankrupt. He cannot give away his estate, or waste it, or prefer creditors. The assets may be followed into the hands of third parties if transferred after petition filed; and an injunction may be granted to restrain such action on his part, or a warrant may issue for his arrest. Section 5024, Rev. St. For certain offenses enumerated in section 5132 the act provided that he as well as a voluntary bankrupt might be punished criminally by imprisonment. He may be required to submit to examination before the register, even before adjudication. *In re Bromley*, 3 N. B. R. 686; *In re Salkey*, 5 Biss. 486. After adjudication the proceedings in both voluntary and involuntary proceedings are to be conducted in the same manner. Section 5029, Rev. St. It is made his duty by section 5030 to make and deliver a schedule of his creditors, and an inventory and valuation of his estate, in the manner required of a petitioning debtor. Section 5110

throughout makes no distinction between an involuntary and a voluntary bankrupt. The particular clause in question punishes, by refusing a discharge, fraud or negligence in the care, custody, or delivery to the assignee of the estate, and loss, waste, or destruction of his estate caused or permitted by the bankrupt. It is the fraud or negligence, active or permissive waste or destruction, for which he must suffer, and no punishment is imposed for acts done in good faith by the involuntary bankrupt in the handling of his estate prior to his adjudication. The act must receive a liberal construction, (*In re Muller*, 3 N. B. R. 329;) and this rule applies to section 5110, which must be read in connection with the whole act to ascertain its intent. The clause in question should be read as though it said:

"Or has been guilty of any fraud or negligence in the care, custody, or delivery to the assignee of the property belonging to him at the time of the presentation of his petition or inventory, or if he has caused, permitted, or suffered any loss, waste, or destruction thereof."

Nor do I think the second ground of objection to this specification can be sustained. The word "estate" and the word "property," used in the second clause of section 5110, are each broad enough to include land; and fraud or negligence, waste or destruction, on the part of the bankrupt, touching or concerning land which is a part of his estate, may be the subject of specification in opposition to his discharge. The assignment carries to the assignee the bankrupt's real estate, and there is every reason why injuries to the real estate should be punished as well as to personal property. There is nothing in the act to justify the conclusion that it was the intention of congress to use either the word "estate" or the word "property" in a restricted sense. The first act detailed under this specification is that—

"The said Baum, in the fall of 1878, being in possession and custody of certain timber and coal lands, comprising about 2,200 acres, the two-thirds whereof was owned by John Carrier and A. F. Baum prior to the presentation of the petition against them, and belonged to their estate in bankruptcy, situate in Brady and Houston townships, Clearfield county, Pa., entered into a conspiracy with George McLean and others to procure the title of said real estate to himself and said McLean, and to prevent the same from being sold for the benefit of his creditors; and, being so in possession and custody of said land, and in pursuance of said conspiracy, caused to be cut and removed from said land a large quantity of white pine timber, to-wit, about 3,000,000 feet, board measure, to the great damage of said estate; this for the purpose of defrauding his creditors."

To this portion of the specification specific objection is made by the bankrupt that it alleges fraud and negligence on part of the bankrupt in the care and custody of his property as long as four years and more after his adjudication in bankruptcy, and that it does not state that the lands therein referred to belonged to the bankrupt estate at the time said bankrupt had the possession and custody of them, and, for aught that appears from the specification, he was claiming the lands by paramount title. It may be true, as argued by his counsel, that any duty the bankrupt owed in the care and custody of his estate ceased with the ap-

pointment of his assignee; but this portion of the specification goes further, and charges active waste and destruction of the estate by the bankrupt. The words, "or if he has caused, permitted, or suffered any loss, waste, or destruction thereof," in the second clause of section 5110, are not, in my opinion, to be restricted to injuries occurring prior to the appointment of the assignee, but include any such injury prior to the bankrupt's discharge. He is not responsible for the care and custody of his estate after it has gone into the possession of the assignee, but he certainly is under obligation at all times to avoid any acts or connection with any acts of waste, loss, or destruction of his assets; and this portion of the specification is sufficiently definite in its statement of the charge. The time is stated, the property is defined, it is stated that the two-thirds interest therein belonged to the estate in bankruptcy, and the acts of waste are definitely set forth. In my judgment, this portion of the second specification should be sustained upon the present motion. The second act detailed under this specification is that—

"The said Baum, having a tenant, one George G. Ingersol, in the possession and custody of certain real estate situate in the borough of Freeport, Armstrong Co., Pa., being lots Nos. 1, 2, and 60 in the old plan of said borough, and other lots adjoining Nos. 1 and 60, which said real estate was owned by Baum prior to the presentation of the petition against him, and belonged to his estate in bankruptcy, on or about October 1, 1889, sold and conveyed said real estate to A. J. Long and J. L. Long, and procured the possession thereof to be transferred to said Long for the purpose of preventing the same coming to the hands of his assignee in bankruptcy, and with intent to cheat and defraud his creditors."

This portion of the specification cannot, in my opinion, be sustained. The charge is that in 1889, more than 15 years after his adjudication as a bankrupt, and after the title to the real estate had passed to the assignee, the bankrupt sold certain lots to the Messrs. Long, and procured possession to be given to them for the purpose of defrauding his estate. Nothing here set forth is an offense under section 5110. The alleged sale could have been but a nullity, for the title had passed to the assignee, and Baum could pass no title or interest by his deed, nor could his estate be prejudiced thereby. The allegation of fraudulent motive does not bring his action in this respect within the statute. This portion of the second specification must be stricken out as insufficient for the reason set out in the motion of the bankrupt, namely, that it does not allege any act on the part of A. F. Baum which is made by the act ground for withholding his discharge.

The third specification filed in opposition to the discharge is that the said Baum, being insolvent and in contemplation of insolvency and bankruptcy, and for the purpose of preventing his property from coming into the hands of his assignee and of being distributed in satisfaction of his debts, suffered and permitted certain parties named to enter judgments against him on April 13, 1874, (specifying the judgments,) which were entered upon notes and a check which had been previously paid by said Baum. The counsel for the bankrupt moves to strike off this specification for the general reason that, even if true, the allega-

tions of that specification are not ground for withholding the discharge under the act. An examination of section 5110 shows but two clauses under which it can be contended that this specification can be sustained, namely, the fifth and ninth. It may be noted that the Revised Statutes omit the last ground for withholding discharge specified in the twenty-ninth section of the act of March 2, 1867, which was, " or has been guilty of any fraud whatever, contrary to the true intent of this act." The fifth clause provides that no discharge shall be granted if the bankrupt has given any fraudulent preference contrary to the provisions of the act. It has been held that this provision has reference only to such preferences as are forbidden and made void by the thirty-fifth section of the act of March 2, 1867, now section 5128 of the Revised Statutes, (*In re Pierson*, 10 N. B. R. 107; *In re Locke*, 2 N. B. R. 382; *In re Burgess*, 3 N. B. R. 196; *In re Freeman*, 4 N. B. R. 64; *In re Warner*, 5 N. B. R. 414;) and I do not find any cases holding to the contrary. Is the case, as set forth in this specification, within section 5128? That section provides that if any person, being insolvent, etc., with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, procures or suffers any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, etc., the same shall be void. To bring a case within this section, the act must have been done by a person insolvent or in contemplation of insolvency, with a view to give a preference to a creditor or person having a claim against or who is under a liability for the bankrupt, and such person must have reason to believe that the transaction is in fraud of the statute. *Gibson* v. *Warden*, 14 Wall. 244. The specification, however, in substance charges that the bankrupt permitted judgment to be entered against him by parties who were not in fact creditors, and who had no claims against him, whose judgments were, therefore, fictitious and fraudulent. It is not, therefore, a case within section 5128. "Such a transaction as is charged in these specifications would not fall under section 5128, because not done with a view to give a preference to any creditor. That was not the intention of this transaction, nor was there any *bona fide* debt or *bona fide* creditor." *In re Pitts*, 8 Fed. Rep. 263. The case stated by this specification would fall within section 5021, Rev. St., (formerly section 12 of the act of June 22, 1874,) and would be ground for adjudication in bankruptcy; but several acts are stated in that section as grounds for adjudication which are not grounds for refusing a discharge, (*In re Pierson*, 10 N. B. R. 107,) and this case is one of that class of acts. Nor does the case come within the provisions of the ninth clause of section 5110.[1] That

[1] Rev. St. U. S. § 5110, cl. 9: "If the bankrupt has, in contemplation of becoming bankrupt, made any pledge, payment, transfer, assignment, or conveyance of any part of his property, directly or indirectly, absolutely or conditionally, for the purpose of preferring any creditor or person having a claim against him, or who is or may be under liability for him, or for the purpose of preventing the property from coming into the hands of the assignee, or of being distributed in satisfaction of his debts."

clause refers to any pledge, payment, transfer, assignment, or convey-ance by a bankrupt, directly or indirectly, absolutely or conditionally, of any part of his property, for the purpose of preferring any creditor, or for the purpose of preventing the property from coming into the hands of the assignee. If these judgments had been followed by sale on execution of the bankrupt's property, there would have been an in-direct transfer of his property for the purpose of preventing its coming into the hands of the assignee, and the case would have been within the ninth clause. *In re Pitts*, 8 Fed. Rep. 263. But this is not alleged. Nothing appears to have been done after entry of judgment. It does not even appear that any attempt was made by the plaintiffs to collect their judgments from the assigned estate either by execution or claim of payment by the assignee. Upon the case as stated by this specification, I am compelled to conclude that there is no ground shown therein to prevent the discharge. The third specification must, therefore, be stricken off. Let an order be prepared accordingly.